UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GUY T. WOOLFOLK,                    )
                                    )
             Petitioner,            )
                                    )
        v.                          )         No. 4:09 CV 367 HEA / DDN
                                    )
MICHAEL BOWERSOX,                   )
                                    )
             Respondent.            )

### REPORT AND RECOMMENDATION

The petition of Missouri state prisoner Guy T. Woolfolk for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was referred to the undersigned Magistrate Judge for review and a recommended disposition pursuant to 28 U.S.C. § 636(b).  For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.

### I.  BACKGROUND

In March 2004, petitioner Guy T. Woolfolk was charged by an Information in Lieu of Indictment with 7 counts: (1) Robbery in the first degree:  on December 23, 2002, Woolfolk forcibly stole a Ford Expedition vehicle and a purse from a woman while armed (Count 1); (2) Armed criminal action: Woolfolk committed the Count 1 offense with a deadly weapon (Count 2); (3) Felonious restraint: on December 23, 2002, Woolfolk restrained a woman against her will, exposing her to a substantial risk of serious physical injury (Count 3); (4) Unlawful use of a weapon:  Woolfolk exhibited a gun on December 23, 2002 in an angry and threatening manner to several people (Count 4); (5) Assault in the first degree:  Woolfolk pointed a pistol at an individual and fired two shots at him (Count 5); (6) Armed criminal action: Woolfolk committed the Count 5 offense with a deadly weapon (Count 6); and (7) Persistent Offender status: Woolfolk was convicted of several felony offenses (Count 7).  (Doc. 11, Ex. C, at 58-61.)

Thereafter, in March 2004 a jury in the Circuit Court of St. Louis County convicted Woolfolk of robbery in the first degree (Count 1) and felonious restraint (Count 3). (Doc. 11, Ex. C at 80-81.)

Trial facts

The trial transcript indicates the following facts in support of the jury's verdicts included the following: On December 23, 2002, upon her return to her apartment in St. Louis County, after shopping with her (D.L.'s) infant daughter and her mother, D.L. parked her SUV in the apartment building parking lot. She got out, leaving the engine running, with her infant daughter still inside the vehicle, and began to unload groceries from her car. She intended to park in the parking spot her mother would soon vacate when she drove home. While unloading, D.L. then saw a man walk across the parking lot toward her. She saw that the individual wore a dark jacket and a red bandanna over his face, and one of his eyes and eyebrows were distinctive in its shape. He carried a small, silver handgun. Because her 9-month-old daughter was in her car, she turned and walked toward the man and asked him to just let her get her baby. The man said, "Shut up, bitch," and pushed her back. He said, "Shut up, bitch," again. Then she ran to the passenger side of the vehicle and he ran to the driver's side. She and her mother, who was in her own vehicle, screamed, "Call 911." D.L. jumped into the passenger seat but was unsuccessful in extracting the ignition key. The man jumped into the driver's seat. D.L. then jumped out and tried to get into the rear seat to get her daughter out. The man put the car in gear and began to drive away. D.L. was unable to remain in the vehicle and fell onto the parking lot. She then ran down the parking lot, screaming, "He has my baby." When the man drove away, D.L.'s paramour, M.B., got into her mother's car and began following the SUV. D.L. banged on the window of a man in a jeep and successfully persuaded him also to follow the SUV. Because they lost sight of the SUV, the jeep driver took D.L. to the Hazelwood Police Department. Soon thereafter, a Florissant Police Officer responded to the Hazelwood Police Department. This officer later told her that her daughter and M.B. were all right. D.L. described the carjacker as a black man in his late teens or early 20s, with light skin complection, taller than 5 feet 10 inches, and slim of build. At trial, D.L. described an exhibit as being similar to the firearm used by the perpetrator.

- 2 -

On December 24, 2002, two detectives, one of whom was Det. James Cox, went to D.L.'s residence and showed her and M.B. two photo lineups, each viewing the lineups outside the presence of the other.  After looking at these photo lineups, D.L. was certain each did not include a photo of the perpetrator.  On December 26, 2002, the same two detectives brought a third photo lineup to D.L.'s residence and displayed it to her.  When she looked at this third photo lineup, D.L. immediately identified subject 5 as the perpetrator because of his eyes and his eyebrows.  At trial, D.L. also identified the same photo as being a photo of the carjacker and in the courtroom she identified petitioner Guy Woolfolk as the carjacker.

M.B. testified that he saw D.L.'s mother screaming and that she told him that someone carjacked D.L. with the baby.  He jumped in her car and followed the SUV to a commercial parking lot which was well illuminated. He saw the right side of the carjacker's now-unmasked face.  M.B. described the face of the carjacker as thin, light complectioned, and with "keen features."  The perpetrator pointed a light-colored gun at him and M.B. ducked down.  The perpetrator again drove off with D.L.'s paramour in pursuit.  The carjacker drove a distance and pulled into a college parking lot.  There M.B. again saw clearly the carjacker's full face.  At this time, the carjacker fired two shots at M.B.  Then the carjacker continued to flee, driving behind the college, down a hill, and between two houses, with M.B. in pursuit.  Shortly thereafter, the carjacker stopped and got out of the SUV.  M.B. also stopped and the carjacker pointed the gun at him.  M.B. got out and told him to give up the car. This area was illuminated.  M.B. testified that the carjacker appeared to be in his early 20s, 6 feet 2 inches tall, light complected, wearing dark clothing, with nothing covering his face.  The carjacker then reached into the SUV, took out D.L.'s purse and walked away from the scene.  M.B. attended to D.L.'s and his infant daughter in the SUV.

Later, M.B. gave a statement to the police.  He also looked at two photo lineups in which he did not see the carjacker.  In a third photo lineup, M.B. identified a subject as the carjacker.  He identified Woolfolk in the courtroom as the carjacker.

- 3 -

The State's evidence included a small, light colored handgun which was found on December 30, 2002, by children at a day care center in Florissant.

Post-judgment proceedings

On May 5, 2004, Woolfolk was sentenced,[1] as a prior and persistent offender, to a term of 25 years for the first-degree robbery and 15 years for the felonious restraint. (Doc. 11, Ex. C, at 114-15.) The Missouri Court of Appeals affirmed Woolfolk's convictions and sentences. State v. Woolfolk, 184 S.W.3d 76 (Mo. App. E.D. 2005) (summary disposition); (Doc 11, Ex. E, Supplemental Memorandum).

Thereafter, Woolfolk filed an amended motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Doc. 11, Ex. H, at 19, 28-36.) The motion court issued its Findings of Fact and Conclusions of Law and denied Woolfolk's motion for post-conviction relief. (Id. at 40-49.) The Missouri Court of Appeals affirmed the denial of post-conviction relief. Woolfolk v. State, 250 S.W.3d 441 (Mo. App. E.D. 2008)(summary disposition); (Doc. 11, Ex. I, Supplemental Memorandum).

## II.  PETITIONER'S GROUNDS FOR HABEAS RELIEF

Thereafter, Woolfolk filed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) He alleges four grounds for relief in this habeas action:

(1)  The State committed a Brady violation by withholding information regarding Police Officer James Cox's termination from the police department and his subsequent involvement in a federal investigation.

(2)  The trial court erred in granting the State's motion in limine, thereby prohibiting the defense from referring at trial to Officer Cox's termination.

(3)  The trial court erred in denying petitioner's Batson challenges after the State used six of its seven peremptory strikes to exclude African-American venire persons from the jury.

(4)  Trial counsel rendered ineffective assistance of counsel by failing to inform petitioner that ultimately it was his

---

[1]The presiding circuit judge who sentenced petitioner was the Hon. John A. Ross, now a District Judge of this court.

- 4 -

decision whether to testify.  Petitioner alleges he wanted to testify at trial, but counsel told him he could not do so because counsel did not want his prior felony convictions placed in evidence before the jury.

Respondent contends that all four grounds for relief fail on their merits, and moreover that Ground 2 is procedurally barred because petitioner failed to raise the claim in accordance with Missouri procedural rule.[2]

### III. EXHAUSTION OF REMEDIES AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state court remedies for the grounds they allege in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254.  See 28 U.S.C. § 2254(b)(1)(A)(2006).  A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  Given the limited opportunities in Missouri courts for raising issues on direct appeal[3] and in motions for post-conviction relief,[4] no proper procedure for litigating his federal habeas grounds is now available to petitioner.  Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011).

However, exhaustion in the sense that petitioner has no remaining procedure for presenting a ground to a state court does not satisfy the federal statutory requirement.  Rather, a petitioner must have fairly presented the substance of each federal ground, in its factual circumstances and with its legal basis, to the state trial and appellate courts.  Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).  If he has not done so and has no remaining procedure for doing so because he has defaulted

---

[2]Petitioner, subsequent to this document, filed a Response and Rebuttal to the State's Show Cause Order.  This however did not affect the disposition of the case.  (Doc. 12.)

[3]A convicted defendant has 10 days to file an appeal after the judgment or order appealed from becomes final.  Mo. Sup. Ct. R. 30.01(d).

[4]A Missouri state prisoner has 90 days to file a motion for post-conviction relief after the date the mandate of the appellate court is issued affirming the judgment or sentence.  Mo. Sup. Ct. R. 29.15(b).

on the legitimate requirements of the otherwise available procedures, his ground for federal habeas relief is barred from being considered by the federal courts. Grass, 643 F.3d at 584; King, 266 F.3d at 821.

Nevertheless, a petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the ground would result in a fundamental miscarriage of justice. Maples v. Thomas, --- S.Ct. ---, No. 10-63, 2012 WL 125438, at *9 (2012); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples, 2012 WL 125483, at *10; Coleman, 501 U.S. at 750-52.

To establish actual prejudice, the petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. Schlup v. Delo, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a federal habeas court to reach the merits of a procedurally defaulted claim. Id. at 316. The requirement set forth in Schlup means that an habeas petitioner must "[c]ome forward not only with new reliable evidence which was not presented at trial, but [] come forward with new reliable evidence which was not available at trial through the exercise of due diligence." Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).

Petitioner has not alleged that any external factor prevented him from raising any federal ground for relief in the appropriate forum. Nor has he asserted his actual innocence or demonstrated that failure to review his claims would represent a "fundamental miscarriage of justice." Schlup, 513 U.S. at 324.

Nevertheless, Congress has authorized this court to dismiss barred grounds for relief on their merits if the court concludes that the grounds are without merit. 28 U.S.C. § 2254(b)(2).

As stated above, respondent asserts that none of petitioner's federal grounds for relief have merit.

## IV. STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a ground that has been decided on the merits in state court unless that adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d)(1)-(2).

A state court's decision is "contrary to clearly" established law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000) (plurality opinion). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

The standard for habeas review articulated by AEDPA applies only to those claims which were adjudicated on the merits by a state court. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002).

- 7 -

The pre-AEDPA standard for habeas review governs grounds that were not adjudicated on the merits by a state court. Robinson, 278 F.3d at 865 ("Because this claim apparently was not adjudicated by the Minnesota court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the [constitutional] error complained of affected the outcome of the trial, or that the verdict likely would have been different absent the now-challenged [defect]." Id. at 866 (internal citations omitted).

## V.  DISCUSSION

For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.

## GROUND 1

In Ground 1, petitioner contends the State committed a Brady[5] violation by withholding information about the termination of Det. James Cox's police department employment and his subsequent involvement in a federal investigation. (Doc. 1, at 6.) Respondent argues the ground is without merit. (Doc. 11, at 5-9.)

This ground came before the Missouri Circuit Court in petitioner Woolfolk's amended motion for a new trial. In that motion petitioner argued that the trial court erred by granting the State's motion in limine to prohibit any comment on or reference to Det. Cox's termination of police employment. Petitioner argued that the State knew about, but failed to investigate, a federal criminal investigation of Cox's activities as a Florissant police officer but failed to disclose that Cox had been investigated for planting evidence during an investigation other than petitioner's. Further, petitioner argued that because the defense did not have this information for petitioner's case, defense counsel was unable to cross-examine Cox's police partner about the termination of his partner. (Id., Ex. C, at 106-11.) Cox did not testify at petitioner's trial, but his partner, Det. Noser, did testify. (Id., Ex. D.)

---

[5]Brady v. Maryland, 373 U.S. 83 (1963).

- 8 -

The circuit court denied this ground of the amended motion for a new trial stating:

> Okay, the Court has considered this matter.  The State clearly has a duty under Brady and under the rules of discovery to inform the defendant of any exculpatory evidence information that might tend to be exculpatory. . . .  It is a continuing duty to disclose and investigate.  I think you do have a duty to go beyond and to investigate.  And do (sic) I think the State perhaps could have done more than they did, at this point, it is not clear, because I'm not sure what they would have been able to obtain from the Federal authorities.
>
> As I understand it, Jim Cox was a Florissant police detective who was involved in the investigation of this case, who did write the original report, and at some point, left the Florissant Police Department.  This is currently an ongoing investigation involving Jim Cox.  There has been no indictment, no charge, no plea of guilty, no adjudication that he has committed any criminal act.  There is no evidence to indicate that it has anything to do with this particular case, and although I think the State should have done more than they did, I don't think that there is any evidence to indicate to the Court that there was a Brady violation, or a violation of the rules of discovery.  I think the rules of discovery were complied with, based on the evidence before the Court, and that, in fact, there is no Brady violation.
>
> As I understand it, even considering the argument most favorable to the defendant, would be that there is an investigation of wrongdoing [that] involves something totally unrelated to this case, and that somehow, as it relates to someone who didn't even testify in this trial, that that would have caused prejudice to the defendant.  And I think based on all of the evidence before the Court, that there is no evidence to indicate that would be the case.  The witness who we are talking about, Mr. Cox, wasn't even a witness in this case.  And again, although I think the State could and should have done more than they did, there is no evidence to indicate that there was a Brady violation, no evidence to indicate that there was a violation of any of the rules of discovery, and based upon that, that point will be denied.

(Id. Ex. D, at 421-22.)

On direct appeal, the Missouri Court of Appeals affirmed the denial of relief on this ground, citing and commenting on the relevant case, Brady v. Maryland, 373 U.S. 83 (1963).  It concluded that, even assuming Cox was terminated from his work as a police officer because of how he performed his duties in an unrelated matter, and assuming Cox testified

in petitioner's trial, the evidence of his termination would not have been admissible because Cox had not been convicted of anything arising out of the investigation.  Further, it would not have been admissible to impeach Det. Noser's testimony, because petitioner conceded that Noser had no direct knowledge of the investigation of Cox.  (Doc. 11, Ex. E, at 2-5.)

In Brady v. Maryland, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  The Court has since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and the duty encompasses impeachment, as well as exculpatory, evidence, United States v. Bagley, 473 U.S. 667, 676 (1985).  Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682.  In order to comply with Brady, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.  Kyles v. Whitley, 514 U.S. 419, 437 (1995).

The three components of a Brady violation are: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Petitioner has failed to demonstrate a Brady violation either to the Missouri state courts or to this court.  Indeed, the record refutes the petitioner's allegations that the State committed a Brady violation for allegedly withholding information regarding Cox's termination and involvement in a federal investigation.  To the contrary, the prosecutor was not given a reason for Cox's termination, but was assured the termination was separate from this case.  (Doc. 11, Ex. D at 416-20.)  In fact, Cox's termination did not concern his conduct while in official duty.  (Id.)  Rather, it concerned misconduct occurring while Cox was off-duty.  (Id.)  And this information, along with Cox's contact information

- 10 -

and address of new employment, was relayed to defense council. (_Id._, at 416-19.)

The prosecutor knew about a federal investigation involving Cox. (_Id._ at 417-18.)  However, the prosecution failed to disclose this information. (_Id._ at 416-17.)  Nonetheless, this evidence was neither impeaching nor exculpatory.  Evidence of a federal investigation, separate from petitioner's case, has no bearing on whether the petitioner committed the conduct in question.  Furthermore, Cox neither testified at trial nor was the subject of questioning by either side[6].  There had been no indictment, no charge, no guilty plea, no adjudication that Cox committed any criminal act.  _See_ _State v. Wolfe_, 13 S.W.3d 248, 258 (Mo. 2000)(holding witness credibility not impeached with evidence of mere arrest, investigation, or criminal charge, not resulting in conviction). Therefore, even if Cox had testified, such evidence would not have been admissible to impeach his credibility.  The federal investigation was separate and distinct from the petitioner's case. (Doc. 11, Ex. D, at 416-20.)  Even if this was disclosed, such information would not have affected the outcome of the petitioner's trial.

The rulings of the Missouri state courts that petitioner failed to demonstrate the State committed a _Brady_ violation are reasonable applications of the facts to federal law.

Accordingly, Ground 1 lacks merit.


**Ground 2**

In Ground 2, petitioner contends the trial court abused its discretion in granting the State's motion in limine to prohibit any comment on, or reference to, Officer Cox's termination. (Doc. 1, at 7.)

Under Missouri law, a ruling in limine is interlocutory in nature. _State v. Purlee_, 839 S.W.2d 584, 592 (Mo. 1992).  Thus, a motion in limine, in and of itself, preserves nothing for appeal. _Id._  Instead, the proponent of the evidence must attempt to present the excluded evidence

---

[6]Defendant argues despite inability to cross-examine Cox, counsel might have been able to question his partner about Cox's termination. However, the partner's knowledge was based upon speculation, not personal knowledge. (Doc. 11, Ex. E, at 5; Doc. 11, Ex. D at 416.)

at trial.  <u>Id.</u>  If an objection to the proffered evidence is sustained, the proponent must then make an offer of proof in order to preserve the record for appeal and to allow the trial court to further consider the claim of admissibility.  <u>Id.</u>

Petitioner failed to follow the applicable Missouri state procedural rules.  He failed to make an offer of proof during trial in order to preserve this ground for appeal.  Therefore, he is procedurally barred from raising this ground in this federal habeas action.  <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997).

Petitioner is unable to avoid the procedural bar.  First, there was no external impediment that prevented his trial counsel from presenting an offer of proof to preserve the record for appeal.[7]  Second, there is no new evidence, brought forth by petitioner, from which his innocence can be shown.

Therefore, Ground 2 is procedurally barred.

However, for the reasons stated regarding the lack of merit for Ground 1, the Circuit Court's in limine ruling was a reasonable application of federal law to the facts.  Therefore, Ground 2 is without merit.  <u>See</u> 28 U.S.C. § 2254(b)(2).

**Ground 3**

In Ground 3, petitioner contends the trial court erred in denying his <u>Batson</u> challenges after the State used six of its seven peremptory strikes to exclude African-American venire persons from the jury.  (Doc. 1, at 8.)  Petitioner contends the State failed to give sufficient race-neutral reasons for striking such jurors, resulting in a violation of petitioner's right to equal protection under the law.

In <u>Batson v. Kentucky</u>, the Supreme Court reaffirmed the principle that the use of peremptory strikes of venire members on the basis of race is unconstitutional.  <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  On direct appeal from the convictions, the Missouri Court of Appeals applied the three-step process of <u>Batson</u> and its progeny for determining whether a

_____

[7]Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default.  <u>Murray v. Carrier</u>, 477 U.S. 478, 492 (1986).

- 12 -

defendant's rights have been violated by race-based peremptory challenges:
(1) the defendant must timely object to the strike by sufficiently raising
a prima facie case to support an inference that the prosecutor exercised
the strikes to purposefully remove venire panel members on the basis of
race; (2) once the defendant makes the prima facie showing, the burden
shifts to the prosecutor to proffer a race-neutral reason for striking the
challenged venire member; and (3) the trial court then must decide whether
the defendant has established that the proffered reason for the strike was
a pretext for purposeful discrimination.   (Doc. 11, Ex. E, at 6-7); see
Broom v. Denney, 659 F.3d 658, 661 (8th Cir. 2011); State v. Sutherland,
939 S.W.2d 373, 379 (Mo. 1997).

     Here, the trial court applied the Batson three-step procedure.  The
prosecutor explained that he struck venire persons Dampier, Scott, and
Johnson  because  he  was  concerned  their  employment  would  make  them
sympathetic to the defendant.  (Doc. 11, Ex. D, at 84-89.)  This is a
valid, race-neutral reason for striking a juror.  See United States v.
Maxwell,  473  F.3d  868,  872  (8th  Cir.  2007)(holding  the  inference
employment might make a juror sympathetic is a valid, race-neutral reason
for striking a juror).  The prosecutor struck venire persons White and
Young because their family members had been incarcerated.  (Doc. 11, Ex.
D, at 85-91.)  This is also a valid, race-neutral reasoning for striking
a juror.  See United States v. Boyd, 168 F.3d 1077, 1077-78 (8th Cir.
1999)(striking a juror because of a relative who served or was serving a
sentence is a valid, race-neutral reason).  Lastly, the prosecutor struck
venire person Logan because of a previous criminal arrest and conviction.
(Doc. 11, Ex. D, at 89-90.)  That a prospective juror has a criminal
record is a proper, race-neutral reason for striking a juror.  See United
States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007).  Additionally,
there was no showing that the State's proffered race-neutral reasons for
striking the venire persons were pretextual.  Therefore, the trial court's
finding that the peremptory challenges were motivated by valid, race-
neutral reasons was supported by the record.

     On direct appeal, the Missouri Court of Appeals, citing Batson and
the standards set forth above, ruled:

          Our review of the record reflects Defendant did not rebut
     the  State's  proffered  race-neutral  reasons  for  choosing  to

- 13 -

strike the jurors from the venire panel as pretextual.  In
more than one instance, defense counsel stated he had nothing
further after the State presented its race neutral reasoning
for striking the a particular juror.  Moreover, defense
counsel stated the struck jurors could be fair an impartial,
but did not offer any evidence of pretext or a discriminatory
motive by the State in striking the juror.

(Id. Ex. E, at 7.)

The rulings by the Missouri circuit court and the Missouri Court of
Appeals on this ground were reasonable applications of applicable federal
law to the facts.  Therefore, Ground 3 lacks merit.


**Ground 4**

In Ground 4, petitioner contends his trial counsel rendered
ineffective assistance of counsel by failing to inform him that ultimately
it was petitioner's decision whether or not to testify.  (Doc. 1 at 11.)

The right to constitutionally effective assistance of counsel is
rooted in the Sixth and Fourteen Amendments.  Strickland v. Washington,
466 U.S. 668, 684-85 (1984).  A person accused of a crime is entitled to
be assisted, in preparing and presenting his defense, by an attorney who
ensures the constitutional guarantee of a fair trial.  Id. at 684-86, 689.

The Supreme Court in Strickland articulated a two-part test in
determining whether a petitioner successfully has raised a claim of
ineffective assistance of counsel.  Id. at 687, 697.  To prevail,
petitioner must demonstrate, first, that trial counsel's conduct was
deficient, meaning representation fell below an objective standard of
reasonableness, considering all the circumstances.  Id. at 688.  Second,
to establish the existence of prejudice, petitioner must demonstrate that
there is a reasonable probability that, but for trial counsel's deficient
conduct, the result of the proceeding would have been different.  Id. at
694.  Under Strickland, the petitioner must overcome the fact that trial
counsel is "strongly presumed to have rendered adequate assistance and
made all significant decisions in the exercise of reasonable professional
judgment."  See id. at 668-90.  The reviewing court evaluates counsel's
conduct at the time the decisions were made, not in hindsight, and affords
substantial deference to counsel's decisions.  See Rompilla v. Beard, 545
U.S. 374, 381 (2005).

- 14 -

Here, despite petitioner's assertions to the contrary, the record clearly refutes his claim that trial counsel rendered constitutionally ineffective assistance.  At trial, the circuit judge asked petitioner about the issue of whether or not he would testify, and the record reflected on the quality of the representation afforded petitioner by his counsel:

| | |
|---|---|
| THE COURT: | . . . [petitioner] has elected not to testify; is that correct? |
| MR. GOURLEY: | Yes, sir, your Honor. |
| THE COURT: | Mr. Woolfolk, I want to make sure, on the record, I want you to know you have a right to testify in this case. Do you understand that? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | I'm sure you have talked with Mr. Gourley [(defense counsel)], and he has explained all of that to you; is that correct? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Do you need to talk to him any further about that issue? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Is there anyone else you need to talk to about this issue? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Again, it is my understanding after talking to him, it is your decision not to testify in this case? |
| THE DEFENDANT: | Yes, sir. |

(Doc. 11, Ex. D at 370.)

Petitioner's factual statements on the record before the circuit court are simply irreconcilable with the factual allegations in support of his ineffectiveness of counsel claim.  In fact, petitioner's statements demonstrate that he willingly and knowingly waived his right to testify. Therefore, petitioner has not shown that trial counsel failed to inform

- 15 -

him of, or had prevented him from exercising, his right to testify, or that if counsel had not informed him of his right to testify, he would have decided to testify.

The Missouri Court of Appeals ruled this ground against petitioner, holding, "[petitioner's] testimony [before the circuit court] demonstrates that he willingly and knowingly waived his right to testify.  Despite [petitioner's] assertions to the contrary, the record clearly refutes [petitioner's] claim that Counsel rendered ineffective assistance." (Id., Ex. I, at 3.)

The rulings by the Missouri state courts on this ground reasonably applied the applicable federal law to the facts.

Accordingly, Ground 4 is without merit.

## V.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY RECOMMENDED** the petition of Guy T. Woolfolk for a writ of habeas corpus be denied.

The parties are advised they have until March 3, 2012, to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 15, 2012.

- 16 -